**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

_____X
In re:                              :
                                    :
3333 Main, LLC,                     :     Chapter 11
                                    :     Case No. 13-51533
         Debtor.                    :
_____X

*Appearances:*

| | | |
|---|---|---|
| James M. Nugent, Esq. | : | For the Debtor |
| Harlow, Adams & Friedman, P.C. | : | |
| One New Haven Avenue, Suite 100 | : | |
| Milford, CT | : | |
| | | |
| Scott D. Rosen, Esq. | : | For Creditor |
| Cohn Birnbaum & Shea P.C. | : | SA Challenger, Inc. |
| 100 Pearl Street, 12th Floor | : | |
| Hartford, CT | : | |

**MEMORANDUM AND ORDER ON OBJECTIONS TO CLAIMS**
**AND MOTION TO CONVERT OR DISMISS CASE**

I.  Introduction

SA Challenger, Inc., an under-secured creditor, objects to certain unsecured claims (*see* ECF Nos. 79-92) and seeks the conversion of this case to a case under chapter 7 (*see* ECF No. 78).  The Debtor, 3333 Main, LLC, disputes Challenger's standing to object (*see* ECF No. 136) and opposes the conversion motion (*see* ECF No. 134).  For the reasons that follow, Challenger's objections are sustained, and its motion to convert is granted.

II.  Background

The following facts are undisputed:[1]

On September 30, 2013, the Debtor commenced this case by filing a chapter 11 petition and the required schedules, including "Schedule F - Creditors Holding Unsecured Nonpriority Claims". (*See* ECF No. 1 at 14-17.)  The Debtor scheduled fifteen unsecured creditors on Schedule F ("Schedule F Creditors").[2]  Challenger was scheduled by the Debtor as a creditor holding a secured claim of $1,352,000 of which $492,000 was an unsecured portion.  (*See id.* at 10, "Schedule D - Creditors Holding Secured Claims".)  On December 6, 2013, the Debtor filed amended schedules, including an Amended Schedule D, which continued to list Challenger's secured claim as $1,352,000, but amended the unsecured portion of that claim to $977,000 and included the following notation: "Value to be determined by appraisal".  (*See* ECF No. 53 at 6.)  On January 27, 2014, Challenger filed a proof of claim, with different numbers

---

[1]  *See* Audio Files of the April 15, 2014 hearing (ECF Nos. 166-171).

[2]  The unsecured creditors listed on Schedule F are:

| | Creditor | Claim | Amount |
|---|---|---|---|
| (1) | 3333 Main Street, LLC | Loan | $ 1.00 |
| (2) | Bank of America | Loan | $ 1.00 |
| (3) | Branford Railside, LLC | Loan | $ 1.00 |
| (4) | Dahill Donofrio | Subordination/ Indemnification for Mortgage debt | $1,100,000.00 |
| (5) | Equity Release Hldg Corp. | Loan | $ 50,000.00 |
| (6) | Equity Release Hldg Corp. | Loan | $ 200,000.00 |
| (7) | GF Mortgage Corp. | Loan | $ 421,000.00 |
| (8) | Gus Curcio | Loan | $ 250,000.00 |
| (9) | Gus Curcio | Loan | $ 60,000.00 |
| (10) | Ironworks Dev'l | Loan | $ 1.00 |
| (11) | Leonard Paoletta | Loan | $ 100,000.00 |
| (12) | Lou Cirillo | Loan | $ 50,000.00 |
| (13) | Paul Van Stone | Loan | $ 50,000.00 |
| (14) | People's United Bank | Loan | $ 1.00 |
| (15) | Starter Homes, LLC | Loan | $ 1.00 |

The term "Schedule F Creditors" excludes People's United Bank.  (*See infra* note 3.)

than those scheduled by the Debtor, by asserting a claim of $1,184,362.98, of which it designated $860,000.00 as secured and $324,362.98 as unsecured. (*See* Case Claims Register, Claim No. 3-1.)

On February 14, 2014, with one exception,[3] Challenger filed objections to the claims of each of the Schedule F Creditors ("Claims Objections"). (*See* ECF Nos. 79-92.) On March 7, 2014, the Debtor opposed the Claims Objections. (*See* Debtor's Response, ECF No. 136.) None of the Schedule F Creditors responded to the Claims Objections.

On December 30, 2013, the Debtor filed a Disclosure Statement, *see* 11 U.S.C. § 1125, and a Plan of Reorganization, *see* § 1129. (*See* ECF Nos. 60 and 61.) On February 14, 2014, Challenger filed the instant Motion to Covert Case to Chapter 7 or Dismiss Case with In Rem Relief ("Conversion Motion"). (*See* ECF No. 78.) The Debtor objected on March 7, 2014. (*See* ECF No. 134.)

On February 19, 2014, the Debtor filed a First Amended Disclosure Statement ("Disclosure Statement") and a First Amended Chapter 11 Plan ("Plan") to which Challenger objected. (*See* ECF Nos. 101, 102, and 127.) Hearings on the Claims Objections, Conversion Motion, and Disclosure Statement were scheduled and continued to various dates and ultimately were conducted on April 15, 2014 ("April 15th Hearing" or "Hearing").

### III. Discussion

At the April 15th Hearing, the Debtor sought approval of its Disclosure Statement. Challenger objected on the basis that the corresponding Plan is unconfirmable as a matter of law.[4] If so, case law supports the termination of the plan

---

[3] Inexplicably, Challenger did not object to the claim of People's United Bank (the 14th listed creditor on Schedule F, *see* ECF No. 1 at 16), but that apparent omission does not change the analysis of the Claims Objections and the Conversion Motion, discussed *infra* at 9-10.

[4] Challenger also argued that the Disclosure Statement lacks adequate information, including, *inter alia*:

(A) failing to provide information on the amount of allowed unsecured claims, especially since Challenger objected to the claims of the Schedule F Creditors;

confirmation process at the disclosure statement stage, and the Court will address Challenger's Conversion Motion.  *See In re 18 RVC, LLC*, 485 B.R. 492, 495 (Bankr. E.D.N.Y. 2012); *In re Quiqley Co., Inc.*, 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007).

The Debtor, as the Plan proponent, has the burden of proving that it is confirmable.  *See In re Adelphia Commn's Corp.*, 368 B.R. 140, 252 (Bankr. S.D.N.Y. 2007); *see also* § 1129(a) ("The court shall confirm a plan only if all of the following requirements are met . . . ").  The requirements include a subsection that:

> If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by an insider.

11 U.S.C. § 1129(a)(10).

The Debtor's Plan delineates three impaired classes of creditors: the Town of Stratford's tax claim, *see* Plan, § 4.1, Class 1; Challenger's secured claim as the holder of a first mortgage on the Debtor's property, *see id.* at § 4.2, Class 2; and holders of allowed general unsecured claims, *i.e.*, "General Unsecured Creditors", *see id.* at § 4.2 [*sic*], Class 3.

Challenger stated that pursuant to its loan documents with the Debtor, it is permitted to pay the Stratford tax claim, and that it will pay the entire amount of that claim. (*See* Audio File, ECF Nos. 167, 169.)  Under that scenario, Challenger asserted that the Town of Stratford would not be the holder of an impaired class of claims, and Class 1 would be eliminated.  The Debtor did not challenge that conclusion.  (*See id.*)

Challenger, as a holder of a secured claim, and the only member of Class 2, also stated that it would not accept the Plan.  (*See* Audio File, ECF No. 169.)  Confirmation

---

(B) incorrectly stating Challenger agreed to the use of its cash collateral; and
(C) there being insufficient information to determine
    (i) whether the Debtor's $0 valuation of its accounts receivable was accurate;
    (ii) the value of the reorganized Debtor in connection with the proposed issuance of new equity; and
    (iii) whether the new equity owner has the financial abilities to meet the obligations of the reorganized Debtor

(*See* Challenger's Objection, ECF No. 127.)

of the Plan, therefore, depends of whether Class 3 accepts the Plan.  That determination turns on who are the holders of *allowed* unsecured non-priority claims.  *See* 11 U.S.C. § 1126.

*Composition of Class 3*

The membership of a class of claims is not necessarily defined by a debtor plan proponent's schedules, but rather by those who are determined to be bone fide members of that class.  To hold otherwise would permit a debtor plan proponent to manipulate the confirmation process by populating an impaired class through its schedules to ensure compliance with § 1129(a)(10).  It is noteworthy that although the Debtor did not list Challenger as a holder of an unsecured claim on Schedule F,[5] by its Schedule D and Amended Schedule D, the Debtor recognized that a portion of Challenger's claim is unsecured.[6]  That is, by its own Schedules, the Debtor concedes that Challenger is a holder of both a secured and an unsecured claim.  As such, Class 3 includes Challenger as the 16th member.

*Allowance of Claims in Class 3*

A determination of the allowance of claims in Class 3 starts with the relevant sections of the Bankruptcy Code and Rules.  Code § 501(a) states that a "creditor . . . may file a proof of claim."  A creditor is a party in interest who "may appear and be heard on any issue in a case" under Chapter 11.  11 U.S.C. § 1109(b). Code § 1111(a) states:

> (a)  A proof of claim . . . is *deemed* filed under section 501 of this title for any claim . . .that appears in the schedules [*i.e.,* Schedule F] . . . except a claim . . . that is scheduled as disputed, contingent, or unliquidated.

11 U.S.C. § 1111(a) (emphasis added).  Code § 502(a) states that "[a] claim . . . proof

---

[5] On December 6, 2013, Schedule F was amended merely to correct an address of one of the listed creditors.  (*See* ECF No. 53.)

[6] The court further notes that on April 7, 2014, the Debtor stipulated that Challenger "is undersecured." (*See* Stipulation at ¶3 ("Stipulation"), ECF No. 164; *see also* Plan, § 4.2.)

of which is filed under section 501 of this title, is deemed allowed, *unless a party in interest . . . objects*." 11 U.S.C. § 502(a) (emphasis added). None of the Schedule F Creditors were designated as having a disputed, contingent, or unliquidated claim. By operation of law, therefore, each of Schedule F Creditors is deemed to have a filed proof of claim.

Generally, the filing of a proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." *See* Fed. R. Bankr. P. 3001(f); *see also* Fed. R. Bankr. P. 3001(c); *In re Porter*, 374 B.R. 471 (Bankr. D. Conn. 2007); *In re Chain*, 255 B.R. 278 (Bankr. D. Conn. 2000); *In re Central Rubber Products, Inc.*, 31 B.R. 865 (Bankr. D. Conn. 1983); *In re Feinberg*, 442 B.R. 215 (Bankr. S.D.N.Y. 2010). If there is an objection to that claim, the objector, usually the debtor, must "produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Porter*, 374 B.R. at 479-80. "The burden of persuasion under the bankruptcy claims procedure always lies with the claimant, who must comply with Fed. R. Bankr. P. 3001 by alleging facts in the proof of claim that are sufficient to support the claim". *Id.* at 479.

This case falls outside of those parameters because here none of the Schedule F Creditors filed a written proof of claim, and although Challenger filed the Claims Objections, as noted *infra*, none of the Schedule F Creditors participated in the claims allowance process. Nonetheless, upon the filing of the Claims Objections, the Schedule F Creditors would have the burden of proving the bone fides of their claims. To hold otherwise would allow those claims to be allowed by default.

*Notice Regarding the Claims Objections*

When Challenger filed its fourteen Claims Objections on February 14, 2014, each included a Certificate of Service which certified service of the subject Claim Objection on the respective claimant. (*See* ECF Nos. 79-92 (last page of each document).) On February 19, 2014, the Court sent Challenger two Notices of Hearing with corresponding Notice of Hearing Instruction Sheets, stating, among other things, that a hearing on the Claims Objections was scheduled for April 1, 2014. (*See* ECF Nos. 98, 99.) On February 20, 2014, Challenger sent each of the Schedule F Creditors

a second copy of the Claims Objections together with a corresponding Notice of Hearing and Notice of Hearing Instruction Sheet.  (*See* ECF Nos. 112-126).  It filed corresponding Certificates of Service on February 25, 2014.  (*See id.*)  Each Notice of Hearing stated, *inter alia*:

> **SA Challenger, Inc. Creditor has filed an objection to your claim in this bankruptcy case.**
>
> **Your claim may be reduced, modified, or eliminated. You should read these papers carefully and discuss them with your attorney, if you have one.**
>
> \* \* \*
>
> **NOTICE IS FURTHER GIVEN** that any objection to this matter shall be filed with the court clerk's office, 915 Lafayette Blvd., Bridgeport, CT 06604, <u>AT LEAST 2 (TWO) business days prior to the scheduled hearing.</u>
>
> **NOTICE IS FURTHER GIVEN** that said hearing may be continued or adjourned from time to time without further notice other than an order in open court.

Notices of Hearing (ECF Nos. 98, 99) (bold and underline emphasis in original).

None of the Schedule F Creditors appeared at the April 1, 2014 hearing.  The Claims Objections hearing was continued in open court to the April 15th Hearing.  Again, none of the creditors appeared at that continued hearing, nor did any representative of the Debtor other than Debtor's counsel.  (*See* Audio File, ECF No. 169.)  Neither the Debtor nor any party in interest raised any objection as to the adequacy of the notice of the scheduled hearings on the Claims Objections.  To the contrary, the Debtor's attorney specifically stated at the April 15th Hearing that he did not have any issue with the service of the Claims Objections and the Notices of Hearing.  (*See* Audio File, ECF No. 171.)

*Substance of Challenger's Claims Objections*

Parenthetically, as noted, the only party to oppose the Claims Objections was the Debtor.  Thus, it is reasonable to conclude that the Schedule F Creditors either do not wish to assert any claim they may have or they have no claim.  Challenger has raised the additional possibility that Schedule F is a sham intended to delay payment of its debt.  (*See* Audio File, ECF No. 169) (stating Challenger's suspicion that almost all of the Schedule F Creditors are disingenuous claims, to which Challenger objected but to which the Schedule F Creditors did not respond).[7]

The basis for the Claims Objections were identical as to each creditor.  (*See* ECF Nos. 79-92.)  In relevant part, each of the Claims Objections stated:

BASIS FOR OBJECTION

> 9. Insufficient documentation and information.  The Debtor has failed to provide any documentation to support such claim.  At the [§] 341[a] meeting of creditors, the Debtor's principal, Nicholas Owen, testified that he could not provide documentation for such claim.  Nor could he describe any details of the transaction purportedly underlying such claim.

(*Id.*, ¶9 (as to all).)

---

[7] The Court notes that some of these creditors are not strangers to the bankruptcy court.  For example, Dahill Donofrio and Gus Curcio were listed as secured creditors in *In re Cummings Enterprises, Inc.* (*see* Case No. 12-51557, ECF No. 26 at 11-14), and in *In re 1 William Street, Inc.* (*see* Case No. 12-51777, ECF No. 16 at 9).  Gus Curcio was also listed as an unsecured creditor in *In re Alpha 365, LLC*. (*See* Case No. 13-51150, ECF No. 17 at 11.)  Paul Van Stone was a general unsecured creditor in *In re Bridgeport Redevelopment, Inc.* (*See* Case No. 10-33102, ECF No. 1 at 19 ($1.075 million claim).)

Moreover, Dahill Donofrio has also been a debtor in this court twice: in 2001, as a chapter 7 debtor (Case No. 01-50304; discharged July 10, 2001), and in 2012, as a chapter 13 debtor (Case No. 12-50989; schedules never filed; dismissed July 24, 2012 for non-compliance with § 521(*l*)).  Likewise, Lou Cirillo has been a two-time debtor in this court: in 2009, as a chapter 7 debtor (Case No. 09-51187; discharged Sept. 15, 2009), and in 2010, as a chapter 13 debtor (Case No. 10-52126; dismissed on Jan. 21, 2011 for failure to comply with §§ 1307(c)(1) & (5)).

The Debtor's March 7, 2014 Response was patently unavailing. It began with an observation that "[i]n general, SA Challenger lacks standing to object to scheduled claims for creditors which have no obligation to file a proof of claim and thus have never filed a proof of claim". (Debtor's Response at 1, ECF No. 136.). That argument is perplexing given the fact that the Debtor scheduled Challenger as a holder of a secured claim, a portion of which was designated as under-secured, *see supra* at 2, and the clear statutory authority that Challenger, as a creditor, is a party-in-interest which may object to claims. *See* 11 U.S.C. §§ 502(a), 1109(b). Moreover, as noted, just one month later the Debtor stipulated that Challenger was under-secured. *See supra* at 2-3, and note 6.

The Debtor's Response stated:

> 6. Since the Debtor did not dispute any of the claims it listed on its schedules nor list them otherwise, none of those creditors had an obligation to file a proof of claim in order to participate in this case and none of them did so.
> 7. Consequently, there is no claim for SA Challenger to object to. Its [*sic*] has objected to nonexistent proofs of claim. This is improper and a nullity.

(Debtor's Response, ¶¶ 6-7.) The gravamen of that assertion is that since none of the affected creditors filed a proof of claim, there is nothing to which one can object. By the Debtor's logic, there must be a document asserting a proof of claim in order for there to be an objection to the claim. That argument, however, is a non-sequitur that ignores the Bankruptcy Code. Scheduling a claim as undisputed in a chapter 11 case merely allows a proof of claim to be deemed filed for purposes of the claims allowance process. The "deemed filed" language of § 1111(a) does not eliminate the objection mechanism in the claims allowance process. *See* § 502(a) (referencing § 501). Indeed, but for the inter-relationship between §§ 1111(a), 501, and 502(a), a chapter 11 debtor plan proponent could create an impaired class of creditors populated with creditors scheduled as holding undisputed claims, to which no party in interest could object under § 502(a) unless actual proofs of claim were filed. Those Code sections eliminate that potential manipulation of the confirmation process.

It is noteworthy that the Debtor's Response does not address the substance of the Claims Objections , but rather attempts to dismiss them as a ". . . boiler plate

objection [that is] totally inadequate to support an objection, especially to a scheduled claim that is not disputed by the Debtor". (Response, ¶ 9.) That is a rather pejorative reaction given the Debtor's disregard for the codified claims allowance process. That aside, the Claims Objections were not boilerplate. They were precise and specific. *See supra* at 8.

Accordingly, in the vacuum created by the absence of any substantive opposition to the Claim Objections, they are sustained.

### *Consequence of Sustaining Challenger's Objections*

The result of that ruling is that the claims of the Schedule F Creditors are disallowed leaving two unsecured creditors in Class 3: People's United Bank ("People's") with a $1.00 claim, and Challenger with the under-secured portion of its claim, which is at least $977,000. (*See* Amended Schedule D, ECF No. 53 at 6.) Since neither Challenger's actual proof of claim nor People's deemed proof of claim has been objected to, both are deemed allowed. *See* § 502(a). As such, Challenger and People's may accept or reject the Debtor's Plan. *See* § 1126(a).

> A class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

As noted, *supra*, Challenger has stated that it will not vote in favor of the Debtor's Plan. Even if People's were to accept the Plan, the Debtor could not satisfy the mandatory amount and number requirements of § 1126(c). Consequently, it is impossible for the Debtor to secure an impaired class which will vote to accept its Plan, and as a matter of law, the Debtor's Plan is unconfirmable.

### *Challenger's Conversion Motion*

The relevant statute, § 1112(b)(1), states, in relevant part:

> . . . after notice and a hearing, the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, unless the court

> determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1) (emphasis added).  Subparagraph (b)(4) provides a non-exhaustive list of examples of "cause", which includes "the absence of a reasonable likelihood of rehabilitation".  11 U.S.C. § 1112(b)(4)(A); *see also In re SageCrest II, LLC*, Case No. 08-50754, 2010 WL 5372426, *3 (Bankr. D. Conn. Dec. 22, 2010).

Challenger raises several bases to support its Conversion Motion, including that the Plan is patently unconfirmable.  (*See* Conversion Motion at 2-4.)  Challenger argues that conversion would be in the best interest of the creditors since it would place a trustee in control of the estate who could pursue possible avoidable transfers the Debtor's principal is not likely to pursue.  (*See id.* at 4, ¶ 15.)  At the April 15th Hearing, Debtor's counsel not only failed to effectively oppose Challenger's motion, it failed to suggest that there was a reasonable prospect that the Debtor could file a confirmable plan.  (*See* Audio File, ECF No. 171.)

## IV.  Conclusion

FOR THE FOREGOING REASONS, IT IS ORDERED that Challenger's Claims Objections are sustained; and

IT IS FURTHER ORDERED that Challenger's Conversion Motion is granted.

Dated this 29th day of May 2014 at Bridgeport, Connecticut.

By the court

*Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge